**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| Stephen F. Morris and Martha Morris, | ) | |
| | ) | Civil Action No.: 3:16-cv-00880-JMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Auto-Owners Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Auto-Owners Insurance Company ("Defendant"), pursuant to Fed. R. Civ. P. 12(c), filed a motion for judgment on the pleadings (ECF No. 23) on its counterclaim for declaratory judgment against Plaintiffs Stephen F. and Martha Morris ("Plaintiffs") (ECF No. 4 at 10-14) as well as on Plaintiffs' claims for bad-faith refusal to pay, breach of contract, and breach of contract with fraudulent intent against it (ECF No. 1-1 at 19-22). For the reasons that follow, the court **GRANTS** Defendant's motion for judgment on the pleadings (ECF No. 23).

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this action by filing suit in the Court of Common Pleas for Richland County, South Carolina, on February 24, 2016, against Defendant and against Cary's Lake Homeowners Association, Upper Rockyford Lake Owners Association, Inc., and Lake Elizabeth Estates, Inc. (together, not including Defendant Auto-Owners Insurance Company, the "dam Defendants"). (ECF No. 1-1.) In their complaint, Plaintiffs allege that "[o]n October 4, 2015, the State of South Carolina experienced hours of intense rainfall as a result of the convergence of two powerful weather systems" and that "[a]fter hours of rainfall, a dam in northeastern Richland County cracked and then eventually broke completely, allowing a substantial amount of muddy

1

water to flow freely downstream through its earthen dike." (*Id.* at 8.) Anticipating arguments raised

in the instant motion, Plaintiffs specifically allege that the "release of contained water was not due

to a breach of the dam because of the height of the water but rather due to the failed and eroded

construction of the body of the dam itself, as well as a lack of maintenance needed to protect its

integrity." (*Id.*) Plaintiffs further allege that the waters continued to flow through Gills Creek

watershed causing several other dams owned or maintained by the dam Defendants to fail or break.

(*Id.*) "The effect of the dams' breaking . . . was a powerful surge of an enormous amount of water

throughout the Columbia area," which "sent an incursion of water . . . into Plaintiff[s'] home . . . ."

(*Id.* at 9.) Plaintiffs asserted claims for negligence, strict liability, and nuisance against the dam

Defendants based on their alleged failure to maintain, build, and/or operate the dams, the breaking

of which allegedly contributed to the damage of Plaintiffs' property. (*Id.* at 8-24.)

Plaintiffs also allege that their home was covered by an insurance policy entered into

between Defendant and Plaintiffs and that Defendant refused to make payments to Plaintiffs

allegedly due under the policy's terms on the basis that the policy excluded coverage for damage

caused by flooding. (*Id.* at 10; *see* ECF No. 1-2; ECF No. 1-3 at 1-13.) The exclusion at issue states

that Defendant

> do[es] not cover loss to covered property caused directly or indirectly by any
> of the following, whether or not any cause or event contributes concurrently or
> in any sequence to the loss:
>
> . . . .
>
> Water damage, meaning:
>
> (a)  regardless of the cause:
>
> 1) flood . . . .

2

(ECF No. 1-2 at 93, 118.) The policy also contains a notice that purports to be required by the South Carolina Department of Insurance, with the heading "LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY" and stating, "Flood—Flood damage is not covered under your policy." (ECF No. 1-3 at 2.)

> In their complaint, Plaintiffs allege that the exclusion set forth above
>
> does not apply to the circumstances leading to Plaintiffs' losses to their home[,] and payment should be made pursuant to the terms of the homeowner's policy in effect. The damage to the home was the direct result of broken manmade dams due to failed construction and lack of maintenance; the negligence of third-parties caused or greatly contributed to the damage to Plaintiffs' home. It was not the result of a flood as contemplated within the language of the Exclusion for water damage.

(ECF No. 1-1 at 10.) Based on the allegations set forth above, Plaintiffs' complaint includes a claim for breach of contract against Defendant on the ground that Defendant failed to make payments for the damages sustained by the home and a claim for breach of contract with fraudulent intent based on the same failure to make payments. (*Id.* at 20-21.) The complaint also contains a claim for bad-faith refusal to pay against Defendant based on an alleged breach of the implied covenant of good faith and fair dealing again grounded on the same failure to make payments. (*Id.* at 19-20.)

The action was removed to federal court pursuant to the court's diversity jurisdiction (ECF No. 1), and, following removal, the court entered an order severing the claims against the dam Defendants, remanding them to state court, and retaining jurisdiction over the claims against Defendant (ECF No. 37.) Defendant filed a counterclaim against Plaintiffs, seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, *et seq.*, "declaring that the [policy] does not provide coverage for the flood damage to [Plaintiffs' home] under the circumstances presented in Plaintiffs' civil action." (ECF No. 4 at 14.)

Defendant filed the instant motion for judgment on the pleadings, pursuant to Rule 12(c), arguing that it is entitled to judgment on its claim for declaratory judgment because the facts alleged by Plaintiffs show that the policy does not provide coverage for the damage sustained by Plaintiffs' home and that Plaintiffs' claims against Defendant fail as a matter of law because they are all grounded on the allegation that the policy provides such coverage. (*See* ECF No. 23.) Reduced to essentials, Defendants' argument is that the term "flood," as used in the policy and in South Carolina law, encompasses the circumstances alleged by Plaintiffs and, therefore, that the water damage sustained by the home is not covered by the policy. (*See id.*) Plaintiffs argue, however, that the term "flood" in the policy is ambiguous and should be construed in its favor; that the circumstances they allege do not amount to a "flood," as that term is used in the policy; and that the definition of the term advanced by Defendant would lead to absurd results. (*See* ECF No. 33.)

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When a Rule 12(c) motion challenges the sufficiency of a complaint, "[t]he standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." *Drager v. PLIVA USA Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir. 2012)). "Therefore, a motion for judgment on the pleadings 'should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Id.* (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir. 1999)). "A Rule 12(c) motion tests only the sufficiency of the complaint

and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Id.* (citing *Butler,* 702 F.3d at 752).

Nevertheless, "a Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties," such that "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d ed. 2015). Thus, a Rule 12(c) motion is an appropriate vehicle "to obtain declaratory judgments where the parties' only dispute is the proper interpretation of contractual terms." *Geoghegan v. Grant*, No. DKC 10-1137, 2011 WL 673779, at \*3 (D. Md. Feb. 17, 2011) (citing *Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.*, 378 F.3d 596 (7th Cir. 2004); *A.S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190 (4th Cir. 1964)); *see Nat'l Presbyterian Church, Inc. v. GuideOne Mut. Ins. Co.*, 82 F. Supp. 3d 55, 58 (D.D.C. 2015).

Under South Carolina law,[1] "[a]n insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts." *Williams v. Gov't Emps. Ins. Co.*, 762 S.E.2d 705, 709 (S.C. 2014). "'Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" *Id.* (quoting *McGill v. Moore*, 672 S.E.2d 571, 574 (S.C. 2009)). "'It is a question of law for the court whether the language of a contract is ambiguous.'" *Id.* at 710 (quoting *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E.2d 299, 302-03 (S.C. 2001)). "'A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably

---

[1] Because this action is premised on diversity jurisdiction, South Carolina choice of law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *see also CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Both parties agree that South Carolina law applies to the interpretation of the policy, and that is the law the court applies. *See Cosey v. Prudential Life Ins. Co.*, 735 F.3d 161, 169 n.7 (4th Cir. 2013).

intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). "'Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.'" *Id.* (quoting *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995). Moreover, in insurance policies, exclusion clauses are to be narrowly construed, and inclusion clauses are to be broadly construed. *See Hutchinson v. Liberty Life Ins. Co.*, 743 S.E.2d 827, 829 (S.C. 2013); *McPherson ex rel. McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993). However, these rules of construction, inuring to the benefit of the insured, do not trump clear and unambiguous policy terms because "if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties. *MGC Mgmt. of Charleston, Inc. v. Kinghorn Ins. Agency*, 520 S.E.2d 820, 823 (S.C. Ct. App. 1999) (citing *Diamond State*, 456 S.E.2d at 915).

### III. ANALYSIS

**A. Defendant's declaratory judgment counterclaim**

The policy states that it excludes from coverage loss caused by "water damage," which it defines as meaning "regardless of the cause," among other things, "flood." (ECF No. 1-2 at 93, 118.) Defendant contends that this provision unambiguously excludes from coverage under the policy the damage to Plaintiffs' home resulting from the circumstances that Plaintiffs allege in their complaint. (*See* ECF No. 23 at 8-11.) Defendants note that, although the policy does not define the term "flood," it does express an intent that neither the cause of flooding (*see id.* at 9 (citing ECF No. 1-2 at 118 (excluding coverage for water damage meaning flood, "regardless of

6

cause"))) nor intervening or concurrent causes of loss aside from flooding (*see id*. (citing ECF No. 1-2 at 93 (excluding coverage "caused directly or indirectly" by flooding "whether or not any other cause or event contributes concurrently or in any sequence to the loss")) would defeat exclusion of coverage for loss caused by flooding. Defendant also points out that the circumstances that Plaintiffs allege caused damage to their home fit within the definition of "flood" set forth in *M&M Corp. of South Carolina v. Auto Owners Insurance Co.*, 701 S.E.2d 33 (S.C. 2010). (ECF No. 23 at 10.) The court agrees with Defendant.

It is well-settled that an insurance policy term is not ambiguous merely because the policy does not provide a definition for the term. *See Bardsley v. Gov't Emps. Ins. Co.*, 747 S.E.2d 436, 440 (S.C. 2013) ("The provision also is not ambiguous merely because its terms are undefined in the policy. . . . If policy language was rendered ambiguous simply because it was not defined, insurance policies would need to contain definitions for every word in order to avoid ambiguity, a requirement which would be absurd."); *see also* 43 Am. Jur. 2d *Insurance* § 283 (2014) ("The fact that an insurance policy does not define each term within it does not somehow make an undefined term ambiguous. An undefined word or phrase in an insurance policy does not create an inherent ambiguity . . . ." (footnote omitted)); 16 Richard A. Lord, *Williston on Contracts* § 49:17 (4th ed. 2014) ("A policy term will not be found to be ambiguous simply because it is not defined in the policy . . . ."); 2 Steven Pitt, et al., *Couch on Insurance* § 21:14 (3d ed. 2014) ("[T]he lack of a definition does not automatically establish that the undefined term is ambiguous."). Moreover, a term in an insurance policy is not ambiguous, and the rule construing ambiguities in favor of the insured does not apply, when the term has been judicially defined. *See City of Erie v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 163 (3d Cir. 1997) ("Where . . . a term is not defined in an insurance policy but possesses a clear legal or common meaning that may be supplied by a court, the contract is not

7

ambiguous."); *id.* at 163-64 (collecting cases); *Order of United Commercial Travelers of Am. v. Knorr*, 112 F.2d 679, 682 (10th Cir. 1940) ("[T]he instruction that the meaning of a term or word in a policy is most strictly construed against the [insurance] company . . . comes into operation only where there is ambiguity as to the meaning of a term, and there can be no ambiguity when a term has been judicially defined."); *Energynorth Nat. Gas, Inc. v. Continental Ins. Co.*, 781 A.2d 969, 972 (N.H. 2001) ("[A] term in a contract already clearly defined by judicial decision cannot be considered ambiguous. Where judicial precedent clearly defines a term at issue, we need look no further than that definition." (internal citations, quotation marks, and brackets omitted)); 17A Am. Jur. 2d *Contracts* § 385 (2014) ("A term in a contract already clearly defined by judicial decision is not ambiguous; the court will look no further than that definition."); 43 Am. Jur. 2d *Insurance* § 299 ("Where the language to be construed has, by judicial construction, acquired a clear and definite meaning, the rule of construction in favor of the insured does not apply since there is no ambiguity in such case."); 2 Pitt, et al., *Couch on Insurance* § 21:14 ("[T]here can be no ambiguity within the meaning of the rule for strict construction against the insurer when a term has been judicially defined."); *cf. WDI Meredith & Co. v. Am. Telesis, Inc.*, 597 S.E.2d 885, 888 (S.C. 2004) (finding term ambiguous and resolving ambiguity against drafter after explaining that "[n]o South Carolina case or statutory provision has been cited to us which defines the term, nor have we been successful in locating a definition in South Carolina jurisprudence"); *Ex parte United Servs. Auto. Ass'n*, 614 S.E.2d 652, 654-55 (S.C. Ct. App. 2005) (finding term "operator," not defined by policy, to be unambiguous as applied to facts of the case because of its expansive construction in prior Supreme Court decision).

Here, although the term "flood" is not defined by the policy, the parties agree that the South Carolina Supreme Court has provided a controlling definition of the term in *M&M Corp.* (*See* ECF

8

No. 23 at 2, 10; ECF No. 33 at 9.) In that case, workers had constructed an incomplete drainage system on a lot next to a hotel, when four inches of rain fell in one day, resulting in water discharging from the drainage system onto the hotel's parking lot and damaging the hotel. 701 S.E.2d at 34. The hotel's insurer, apparently the same insurer as in this case, denied coverage based in part on the flood exclusion contained in the insurance policy, which, as in this case, did not define the term "flood." *Id.* at 34-35. The district court, where the underlying action was litigated, certified questions to the South Carolina Supreme Court, asking, among other questions, whether, under an all-risk insurance policy, "'flood water' encompasses water discharged from a stormwater collection system in concentrated form, pooled, and that thereafter enters a building." *Id.* at 35. In answering that the waters in question were not flood waters, the Supreme Court explained:

> [The insurer] asserts this Court should define "flood water" as a "great flow of water over what is usually dry land," thus qualifying the water at issue as flood water and excluding the damage from coverage. While South Carolina courts have not defined "flood water," [the insurer]'s suggested definition is far too broad. *Flood waters are those waters that breach their containment, either as a result of a natural phenomenon or a failure in a man-made system, such as a levee or a dam. See Milbert v. Carl Carbon, Inc.* 89 Idaho 471, 406 P.2d 113, 117 (1965) ("Flood waters are waters which escape, because of their height, from the confinement of a stream and overflow adjoining territory; implicit in the definition is the element of abnormality."). In either case, there is an element of fortuitousness. *See Long Motor Lines v. Home Fire & Marine Ins. Co. of Cal.,* 220 S.C. 335, 341, 67 S.E.2d 512, 515 (1951) (clarifying that in an insurance policy that defined "flood" as "the rising of streams or navigable waters," "rising" necessarily connoted an abnormal rising of the waters). We hold that the water in the present case is not flood water because it did not breach containment, but instead it was deliberately channeled and cast upon [the hotel]'s land.

*Id.* at 36 (emphasis added). Because it appears that the South Carolina Supreme Court set out to define the term "flood" for purposes of insurance policies and because the parties agree that the decision in *M&M Corp.* defines the term, the court concludes that the definition of "flood" in *M&M Corp.* applies to the insurance policy at issue in this case.

9

As it pertains to the circumstances alleged in Plaintiffs' complaint, the court concludes that the term "flood," as used in the policy and as defined in *M&M Corp.*, is unambiguous. *See* 43 Am. Jur. 2d *Insurance* § 283 ("[A]n ambiguity is detected claim by claim as a contract may be ambiguous when applied to one set of facts but not another."); 2 Pitt, et al., *Couch on Insurance* § 21:14 ("The fact . . . that terms of a policy of insurance may be construed as ambiguous where applied to one set of facts does not make them ambiguous as to other facts which come directly within the purview of such terms."); *cf. Thermal Eng'g Corp. v. Rasmussen Iron Works, Inc.*, No. 2004-MO-050, 2004 WL 6396017, at *3 (S.C. Sept. 15, 2004) (finding no ambiguity in definition of contractual term "under the facts and circumstances presented in th[e] case"); *Walde v. Ass'n Ins. Co.*, 737 S.E.2d 631, 635 (S.C. Ct. App. 2012) (concluding that "the provisions of the [insurance p]olicy, and the manner in which they apply under the allegations at issue, are unambiguous" (footnote omitted)). Plaintiffs' complaint alleges that, after hours of intense rainfall, several dams cracked and broke in succession, resulting in a powerful surge of water in the Columbia area and the incursion of water into Plaintiffs' home, causing the damage underlying their claims against the policy. (ECF No. 1-1 at 3-4.) These waters, as the complaint describes them, fit precisely into the definition of flood waters that is provided by *M&M Corp.*: "waters that breach their containment . . . as a result of . . . a failure in a man-made system, such as . . . a dam." 701 S.E.2d at 36. Thus, as it applies to the allegations at issue here, there is no ambiguity in the term "flood," and the policy expressly excludes coverage for water damage caused by the circumstances alleged in Plaintiffs' complaint.

Plaintiffs' attempts to avoid this result are unavailing. First, Plaintiffs argue that the focus on the italicized sentence referenced above ignores other language in the *M&M Corp.* decision. (ECF No. 33 at 6, 9-10.) Specifically, Plaintiffs point to the decision's parenthetical quotation of

10

language from the Idaho Supreme Court's decision in *Milbert* (*id.* at 9), which states that "[f]lood waters are waters which escape, because of their height, from the confinement of a stream and overflow adjoining territory," *Milbert*, 406 P.2d at 117. Relying on *Milbert*'s language, Plaintiffs argue that the circumstances alleged in their complaint does not fit into the definition of flood in *M&M Corp.* because it does not allege that the waters escaped their confinement because of their height but because they passed through dams that broke due to negligence. (ECF No. 33 at 9.)

Plaintiffs' reliance on *Milbert*'s language is misplaced. This court has elsewhere explained the error and the danger of equating a tribunal's quotation of another authority's rule with the rule expressed by the tribunal itself, especially when the tribunal's rule and the other authority's rule are clearly not on all fours with each other.[2] Here, the *M&M Corp.* court expressly stated that flood waters are those "waters that *breach* their containment," including breaches that result from "a *failure* of a man-made system, such as . . . a dam." 701 S.E.2d at 36. The verb "breach" embraces the idea of breaking through, or making a gap in, a barrier. *See breach*, Oxford English Dictionary

---

[2] Recently, in *Companion Prop. & Cas. Inc. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300-JMC, 2016 WL 6781057 (D.S.C. Nov. 16, 2016), the court explained:

> The rulings of other courts that are conveyed during . . . a canvassing [of their case law] should not be confused with [a c]ourt's own ruling. It would be strange if, by merely canvassing the extant authorities and citing some more favorably than others, the express rule adopted by a court could be usurped by the expressions of the authorities favorably cited. It would be stranger still for the [the court] to have intended to adopt a rule in all points equal to that created by another court but, when it came to expressing the rule it adopted, to have stated it in such a way that "at first blush" it operates much differently than the other court's rule. . . . [T]he [court] could not have been unaware that the rule it adopted was not on all fours with the rules expressed [by the other courts whose decisions it cited]; in fact, the facial dissimilarity between the rule adopted [by the court] from the rules expressed [by the other courts] should caution against bootstrapping the latter into the former.

2016 WL 6781057, at *18.

11

("To make a breach in (a wall, defence, natural boundary, etc.); to break through."),
http://www.oed.com/view/Entry/22880?rskey=1Yhpbl&result=2#eid (last visited Dec. 28, 2016);
*breach*, Oxford Dictionaries ("Make a gap in and break through (a wall, barrier, or defense)"),
http://oxforddictionaries.com/definition/american_english/breach (last visited Dec. 28, 2016);[3]
*breach*, Merriam-Webster Unabridged Dictionary ("a : to make a breach in : smash a gap through
: make a hole in by attrition[4] . . . c : to wear or cut an opening in especially by erosion"),
http://unabridged.merriam-webster.com/unabridged/breach (last visited Dec. 28, 2016). Relevant
definitions of the noun "failure," in conjunction with the word "dam," can contemplate breakage.
*See failure*, Merriam-Webster Unabridged Dictionary ("a collapsing, fracturing, or giving way
under stress : inability of a material or structure to fulfill an intended purpose"),
http://unabridged.merriam-webster.com/unabridged/breach (last visited Dec. 28, 2016). To the
extent that *Milbert* defined flood so as to include only those waters that escape containment by
overflowing their barriers due to their height and to exclude those waters that escape their
containment due to their breaking through their barriers, this restriction is not contemplated by the
definition of flood expressed by *M&M Corp.* The court rejects Plaintiffs' argument, which would
supplant *M&M Corp.*'s definition of flood with *Milbert*'s definition. The court likewise rejects any
attempt to distinguish this case from *M&M Corp.* on the basis that the water is alleged to have
accumulated as a result of breaking through the dams rather than overflowing them.

---

[3] As examples of the word being used with this definition in mind, the Oxford Dictionaries include,
"the river breached its banks;" "Last year's floods in Gowdall led to over 100 properties being
flooded after a barrier bank was breached by the River Aire;" "That includes bringing back the 10-
acre lake built in the 1740s, but drained in 1922 when the dam wall was breached;" and
"Restoration of a lake that drained away when a dam wall was breached is a major part of the
plan." Synonyms include "break (through), burst (through), rupture[;] *informal* bust (through)."

[4] The Merriam-Webster Unabridged Dictionary includes the phrase "breaching a dam" as an
example of the word being used with this definition.

Next, Plaintiffs argue that the definition of flood in *M&M Corp.* does not extend to circumstances, such as are alleged in their complaint, in which the waters breached their containment due to negligence of a third party. (ECF No. 33 at 8-9.) The *M&M Corp.* decision does not address whether waters that have breached their containment due to negligence may nonetheless constitute flood waters. Aside from its primary definition of flood waters, it held only that they do not include waters that are "deliberately channeled and cast upon" another's land. 701 S.E.2d at 36. The court's limitation on the definition—that the cause of the breach of containment not be deliberate—was spurred by its determination, relying on *Milbert* and *Long Motor Lines*, that there must be "an element of fortuitousness" rather than an intentional act. *See id.* Nothing in this limitation suggests that a breach resulting from negligence would lack the requisite element of fortuity or would equate to a deliberate casting of water. Moreover, Plaintiffs have pointed to nothing suggesting that a reasonably intelligent person would understand the term flood to not apply when waters breach their containment through negligence, and no definition of flood the court has reviewed turns on whether the inundation of water at issue was caused by human negligence. *See generally In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007).[5]

---

[5] Although *In re Katrina* concerned Louisiana law, the issue faced by the Fifth Circuit was substantially similar to the issues presented here. Hurricane Katrina dumped tremendous amounts of water on the Louisiana coast, and the levees along several New Orleans canals ruptured, resulting in water damage to numerous buildings after the city was inundated with water. 495 F.3d at 195. The buildings' owners sued their insurers who had denied coverage, relying on the flood exclusion provisions in the policies. *Id.* at 196. The flood exclusion provisions at issue there were similar to the provision in this case, stating "[w]e do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. . . . We do not insure for loss . . . [c]aused by water damage, meaning . . . [f]lood." *Id.* at 203. The policies did not define the term flood. *Id.* at 209. Under Louisiana law, ambiguity in the policy is to be construed in the insured's favor, and the primary issue was whether the flood exclusions were ambiguous. *Id.* at 207-08. "The plaintiffs contend[ed] that their policies' flood exclusions d[id] not unambiguously exclude coverage for losses caused by an inundation of water resulting from a breached levee where the breach occurred in part because the levee was negligently designed, constructed, or maintained." *Id.* at 208.

Lastly, Plaintiffs argue that reading the term "flood" as broadly as advanced by Defendant's definition would lead to unreasonable or absurd results, as demonstrated by several hypothetical examples they offer. (ECF No. 33 at 11-12.) The court rejects this argument for two reasons. First, Plaintiffs provide no authority for the proposition that the court should refuse to enforce an insurance policy's otherwise unambiguous terms on the ground that they may lead to unreasonable or absurd results, and the court notes that there is case law suggesting the contrary. *See Evanston Ins. Co. v. Watts*, 52 F. Supp. 3d 761, 769 (D.S.C. 2014) ("'We are without authority to alter a contract by construction or to make new contracts for the parties. Our duty is limited to the interpretation of the contract made by the parties themselves, regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully.'" (quoting *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 587 (1988))); Williams, 762 S.E.2d at 709 ("'Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" (quoting *McGill*, 672 S.E.2d at 574)). Such a proposition is even

---

Louisiana case law had not defined flood in the context of a flood exclusion provision and did not address the relevance of inundation of water resulting from natural causes as opposed to man-made causes or inundation caused by human negligence. *Id.* at 208. To determine whether the definition of flood was ambiguous on the ground that it might depend on such causes of inundation, the Fifth Circuit canvassed dictionary definitions, treatises, and case law from other jurisdictions and considered the arguments raised by the insureds. *Id.* at 210-21. After exhaustive review, the court "conclude[d] . . . that even if the plaintiffs can prove that the levees were negligently designed, constructed, or maintained and that the breaches were due to this negligence, the flood exclusions in the plaintiffs' policies unambiguously preclude their recovery." *Id.* at 196.

This court would embark on a similar path—asking whether dictionary definitions, treatises, and case law from other jurisdictions suggests that whether inundating waters constitute flood waters depends on whether the inundation is caused by human negligence. Because that path has been so well hewn by the Fifth Circuit, the court declines to duplicate the effort. The court agrees with the Fifth Circuit that whether the inundation was due to human negligence is irrelevant: to a reasonably intelligent person, an inundation of waters caused by the failure of a dam following hours of intense rainfall is a flood, without regard as to whether the failure resulted from negligence.

14

more dubious when the purported unreasonable or absurd results would occur not under the circumstances of the case under review but rather under hypothetical circumstances that are not before the court. *See Bishop v. Nat'l Health Ins. Co.*, 344 F.3d 305, 308 (2d Cir. 2003) ("When examining an insurance contract for ambiguity, a court must look to the situation before it, and not to other possible or hypothetical scenarios."); *Clarendon Am. Ins. Co. v. Embers, Inc.*, 273 F.3d 1107, at *3 (5th Cir. 2001) (unpublished table decision) ("When analyzing an insurance contract for ambiguity, the relevant facts are those of the instant case, not any possible hypothetical that may eliminate the ambiguity at a theoretical level." (citing Lee R. Russ, *Couch on Insurance* § 21:11 (3d ed. 1995))); *see also* 43 Am. Jur. 2d *Insurance* § 283; 2 Pitt, et al., *Couch on Insurance* § 21:14; *cf. Thermal Eng'g Corp.*, 2004 WL 6396017, at *3; *Walde*, 737 S.E.2d at 635. Second, although Plaintiffs' argument is ostensibly directed at Defendant's interpretation of the term flood in the policy, it is more properly understood as a challenge to the breadth of the South Carolina Supreme Court's definition of flood in *M&M Corp.*, as each of the purported absurdities result from that definition. As Defendant rightly points out, this court has no authority to alter South Carolina law. *Grayson v. Anderson*, 816 F.3d 262, 272 (4th Cir. 2016); *Fleming v. Asbill*, 42 F.3d 886, 890 (4th Cir. 1994); *Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993); *Cincinnati Ins. Co. v. Crossmann Comtys. of N.C., Inc.*, No. 4-09-1379-RBH, 2013 WL 1283381, at *2 (D.S.C. 2013).

In sum, the court concludes that the terms of the policy unambiguously exclude coverage for water damage caused by flood, a term which, according to South Carolina law, encompasses the circumstances alleged by Plaintiffs' complaint. Accordingly, Defendant is entitled to judgment declaring that the policy does not provide coverage for the flood damage to Plaintiffs' home under the circumstances presented in Plaintiffs' complaint.

15

**B. Plaintiffs' claims for breach of contract, breach of contract with fraudulent intent, and bad-faith refusal to pay**

Having concluded that the policy excluded coverage for the damage to Plaintiffs' home caused by the circumstances alleged in Plaintiffs' complaint, the court is compelled to conclude that Plaintiffs' claim against Defendant for breach of contract, which is premised on the allegation that the policy provides coverage for the damage caused by the circumstances alleged in the complaint (*see* ECF No. 1-1 at 20-21), must fail as a matter of law. Defendant is not obligated to make payments for damage not covered by the policy; thus, a claim for breach of contract based on Defendant's failure to make such payments cannot be maintained.

The court also concludes that Plaintiffs' claim for breach of contract with fraudulent intent must fail as a matter of law. "To prevail on a breach of contract with fraudulent intent claim, there must first be a breach of contract." *Holloman v. S.C. Dep't of Mental Health*, No. 3:14-1136-MBS-PJG, 2016 WL 1128023, at *4 (D.S.C. March 23, 2016) (citing *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202 (4th Cir. 1998)). Here, the only breach of contract Plaintiffs allege in their complaint was Defendant's failure to make payments for the damage to their home caused by the circumstances alleged in the complaint. (*See* ECF No. 1-1 at 21.) Because the court has concluded that Plaintiffs cannot proceed with this allegation of breach, they cannot maintain their claim for breach of contract with fraudulent intent, which is based upon it. *See Amason v. PK Mgmt., LLC*, No. 3:10-1752-JFA, 2011 WL 1100169, at *6 (D.S.C. March 23, 2011) (concluding that claim for breach of contract accompanied by fraudulent act "fails at the outset" if the plaintiff fails to sufficiently plead an underlying breach of contract); *Temple v. Med. Univ. of S.C.*, No. 2:02-2014-18, 2004 WL 3317660, at *11 (D.S.C. Feb. 6, 2004) ("In order to recover for breach of contract with fraudulent intent, plaintiff must first prove breach of contract. . . . [A] claim for breach of contract with fraudulent intent fails as a matter of law in absence of a breach."). As the lack of an

16

underlying breach of contract is enough to warrant judgment in Defendant's favor, the court declines to address the parties' arguments regarding whether the complaint sufficiently pleads dishonesty in fact. (*See* ECF No. 23 at 12-14; ECF No. 33 at 12-13.)

The court also concludes that Plaintiffs' claim against Defendant for bad-faith refusal to pay must also fail as a matter of law. The parties agree (*see* ECF No. 23 at 15; ECF No. 33 at 12) that the elements of claim against an insurer for bad-faith refusal to pay benefits are "'(1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.'" *Cock-N-Bull Steak House c. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996) (quoting *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396-97 (1992)). Plaintiffs' claim fails at the second element. Their claim is based on the allegation that Defendant refused to make payments for damages to their home caused by the circumstances alleged in the complaint. (*See* ECF No. 1-1 at 19-20) Because the court has already concluded as a matter of law that no such payments were due under the policy, Plaintiffs may not maintain this cause of action. *See CAMICO Mut. Ins. Co. v. Jackson CPA Firm*, No. 2;15-cv-1823-PMD, 2016 WL 7403959, at *14 (D.S.C. Dec. 22, 2016).

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings, pursuant to Rule 15(c), (ECF No. 23) is **GRANTED**. Defendant is entitled to a declaration that the policy excludes coverage for the flood damage to Plaintiffs' home under the circumstances presented in Plaintiffs' complaint. Additionally, Defendant is entitled to judgment in its favor on Plaintiffs' claims against Defendant for breach of contract, breach of contract with fraudulent

17

intent, and bad-faith refusal to pay (ECF No. 1-1 at 19-21). Accordingly, it is **ORDERED** that judgment be entered in favor of Defendant.

      **IT IS SO ORDERED**.

*J. Michelle Childs*

                  United States District Court Judge

December 29, 2016
Columbia, South Carolina